**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **PEGGY D. MATHES, Administrator,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cv-00751** |
| | ) | **Judge Aleta A. Trauger** |
| **ANNIE WALLER BURNS,** | ) | |
| **REVERSE MORTGAGE FUNDING,** | ) | |
| **LLC, and JOHN BUCKY PHILIP,** | ) | |
| **Trustee,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Defendant Reverse Mortgage Funding, LLC ("RMF") filed a Notice of Removal (Doc. No. 1), removing this action from the Seventh Circuit Court for Davidson County, Tennessee, Probate Division, to this court, on August 26, 2019. Now before the court is plaintiff Peggy Mathes' Motion to Dismiss Transfer to Federal Court and Remand ("remand motion") (Doc. No. 6), to which RMF has filed a Response in opposition (Doc. No. 7). For the reasons set forth herein, the court will grant the motion and remand this matter to the state court from which it was transferred.

## I.     MATERIAL FACTS[1] and PROCEDURAL BACKGROUND

Annie Burns filed a Petition to Admit Will to Probate in the Seventh Circuit Court for Davidson County, Tennessee on October 6, 2016, Case No. 16P1690 ("Probate Action"), seeking to be appointed as the executor of the Estate ("Estate") of John Jefferson Waller, Jr.

---

[1] The facts stated herein are drawn from RMF's Notice of Removal and attached filings from the state court docket. Unless otherwise indicated, the facts are undisputed for purposes of the remand motion.

("Decedent") (Doc. No. 1, at 1), and to probate a will that purported to name her as the beneficiary.[2] Peggy Mathes was appointed administrator of the Decedent's Estate on November 15, 2016. (*Id.* at 2.) In that capacity, on January 27, 2017, Mathes filed her Petition to Recoup Assets of the Estate and Application for a Restraining Order (the "Petition" or "Recoupment Petition"), in the Probate Action, thus initiating the Recoupment Action that has now been removed to this court. The respondents named in the Recoupment Petition are Burns, RMF, and John Bucky Philip, Trustee. (Doc. No. 1-2, at 12–18.)[3]

At the time of his death, the Decedent's assets included an account at Regions Bank and real property located at 2421 Meharry Blvd., Nashville, Tennessee ("Property"). The Petition asserts that Burns, a Nashville resident, obtained a power of attorney ("POA") for the Decedent in July 2016 and, using the POA, placed her name on Decedent's Regions Bank account as having signature rights, enabling her to make deposits and withdrawals on behalf of the Decedent. (Petition ¶ 6.) Decedent at the time was 96 years old, blind, illiterate, incontinent, and in extremely poor health. According to the Petition, the Decedent was not capable of making informed, independent decisions. (*Id.* ¶ 8.) Around the same time, Burns completed an on-line application with RMF to obtain a reverse mortgage on the Property. (*Id.* ¶ 7.)

Mathes alleges that Burns and RMF "fraudulently and knowingly caused Decedent to enter into a reverse mortgage contract for the sole benefit of [RMC and Burns], with no benefit

---

[2] Burns explained in her deposition that her father and the Decedent were first cousins. (Doc. No. 1-2, at 534, 557.) Burns began overseeing the care of the Decedent sometime in the summer of 2016. (*Id.* at 537–38.)

[3] RMF represents that a "true and correct copy of the Docket Sheet from the Probate Action is attached . . . as Exhibit A" to the Notice of Removal. The Docket Sheet attached to the Notice of Removal, however, shows docket entries beginning with the 45th docket entry, on January 11, 2017, through the 208th, on August 20, 2019. It is clear that, rather than a complete docket of all entries in the Probate Action, RMF filed the docket dating from the date of the administrator's Recoupment Petition.

to the Decedent. All contact with [RMF] was made with Annie Burns. Annie Burns and [RMF] colluded to defraud the Decedent in encumbering the[P]roperty," and RMF "engaged in unfair and deceptive actions" in connection with the transaction. (*id.* ¶ 9.) The Petition specifically asserts that RMF knew or should have known, by conducting any investigation, that the Decedent lacked the capacity to enter into a contract or to complete the mandatory independent HUD counseling. The Petition alleges that RMF violated Tenn. Code Ann. § 47-3-115; that RMF "conspired with Annie Burns to commit conversion of funds" belonging to the Decedent to Burns' use and benefit; and that RM "actively participated in the perpetration of the wrongful act and ratified the fraudulent misappropriation of funds belonging to" the Decedent. (Petition ¶ 11.) RMF wired funds in the amount of $48,501 to the Decedent's bank account on September 12, 2016. (*Id.* ¶ 13.)

Burns, using the POA, withdrew $700 from the Decedent's Regions Bank account for her own use prior to the wire transfer from RMF; made additional withdrawals in a sum of more than $17,000 between September 12, 2016 and the Decedent's death on September 24, 2016; and withdrew an additional $29,500 in the days after the Decedent's death, when her power of attorney and signature withdrawal rights were no longer valid for any purpose. (*Id.* ¶¶ 14–16.)

The Petition asserts that Burns intentionally and fraudulently converted to her own use funds belonging to Decedent, to the detriment of the Estate (*id.* ¶ 19), and that Burns and RMF exploited the Decedent, an elderly person, causing the conversion of funds belonging to him by fraud and coercion, in violation of Tenn. Code Ann. § 71-6-120 (*id.* ¶ 20).

The Petition seeks relief in the form of (1) a Temporary Restraining Order prohibiting RMF from foreclosing on the Property; (2) a judgment for damages against Burns and RMF for all funds converted to the detriment of the Estate, before and after the Decedent's death, in an

amount not less than $48,501; (3) an injunction setting aside the reverse mortgage; (4) an order requiring Burns to show cause why the $29,500 taken from the Decedent's Regions Bank account after his death should not be immediately returned to the Estate; (5) an award of attorney's fees, costs, and punitive damages under Tenn. Code Ann. § 71-6-120; and (6) "such other further and general relief" to which the petitioner may be entitled. (Petition at 6–7, Doc. No. 1-2, at 17–18.) Following the filing of the Petition, Administrator Mathes promptly obtained a show-cause order and then an Agreed Judgment against Annie Burns in the amount of $29,854.19, reflecting the amount of money she had removed from the Decedent's bank account after his death, plus an additional $354.19 charged on his credit card after his death. (Doc. No. 1-2, at 32, 50–51.)

On June 14, 2019, Mathes, on behalf of the Estate, filed a Motion in the Probate Court seeking approval of a settlement agreement with Annie Burns, indicating that the proposed settlement "would allow the Administrator to set aside the remaining balance of the Judgment against Annie Waller Burns in exchange for Ms. Burns' dismissal of her petition to probate the Last Will and Testament of John Jefferson Waller dated August 23, 2016." (Doc. No. 1-2, at 167.) The Probate Court entered an Order Approving Settlement on July 12, 2019. The Order, like the motion, indicates only that it approved a settlement agreement that entailed the setting aside of the remainder owed by Annie Burns on the Agreed Judgment entered on February 24, 2017 in exchange for Burns' voluntary dismissal of her will contest.

RMF filed the Notice of Removal on August 26, 2019, asserting that removal is appropriate based on diversity jurisdiction and that removal was timely because it was filed within 30 days of RMF's receipt of a document from which it first ascertained that the case was removable. (Doc. No. 1 ¶ 5.) Administrator Mathes, on behalf of the Estate, filed the remand

motion on September 4, 2019. (Doc. No. 6.) RMF filed a Response in opposition. (Doc. No. 7.)

## II.     LEGAL STANDARD

Removal from state court to federal court is proper for "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over "federal question" cases, that is, cases that implicate questions "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and over "civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a).

A court considers whether federal jurisdiction existed at the time of removal, and the removing party bears the burden of establishing that the jurisdictional requirements have been met. *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). It is well settled in the Sixth Circuit that, "because they implicate federalism concerns, removal statutes are to be narrowly construed." *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Thus, when there is uncertainty as to whether remand is appropriate, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Smith*, 505 F.3d at 405 (citations omitted).

Generally, a notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1). If an action is not removable on the basis of the initial pleading, "a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). If removal under § 1446(b)(3) is based on diversity of citizenship, however, it is subject to a one-year time limitation, which may be extended only

upon a showing of bad faith on the part of the plaintiff:

> A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

28. U.S.C. § 1446(c)(1). Courts have recognized that § 1446(c)(1) "essentially acts as a statute of repose for cases where removal is sought on the basis of a court's diversity jurisdiction by absolutely barring removal after one year." *Good Nutrition, LLC v. Kinsale Ins. Co.*, No. 1:17 CV 2160, 2018 WL 7858719, at *4 (N.D. Ohio Jan. 22, 2018) (citing *Cofer v. Horsehead Research & Dev. Co.*, 805 F. Supp. 541, 544 (E.D. Tenn. 1991)).

The Sixth Circuit has not defined "bad faith" for purposes of § 1446(c)(1), but "[f]ederal courts that have examined the statutory language . . . agree that the issue is whether the plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court." *Dutchmaid Logistics, Inc. v. Navistar, Inc.*, Case No. 2:16-CV-857, 2017 WL 1324610, at *2 (S.D. Ohio Apr. 11, 2017) (collecting cases), *report and recommendation adopted*, No. 2:16-CV-857, 2017 WL 3085863 (S.D. Ohio July 18, 2017).

## III.   ANALYSIS

RMF's Notice of Removal was filed almost two and one-half years after the filing of the Recoupment Petition. RMF asserts that removal is appropriate based on diversity jurisdiction and that removal was timely because it was filed within 30 days of RMF's receipt of a document from which it first ascertained that the case was removable. (Doc. No. 1 ¶ 5.) Specifically, RMF represents that its attorney spoke to Burns and her former counsel on August 19, 2019 and learned that the settlement between Burns and the plaintiff was intended to include a dismissal of all of the administrator's claims against Burns. (*Id.*) On the same day, Burns forwarded to counsel for RMF a copy of a letter dated May 30, 2019 from the administrator to Burns,

indicating that she proposed a settlement that would include a full dismissal of all claims in the Petition against Burns. The Notice of Removal asserts that removal was timely because it was effected within thirty days of RMF's receipt of the May 30 letter and that the administrator had engaged in bad faith "related to the inclusion of Burns and Trustee as Defendants in order to defeat diversity jurisdiction." (Doc. No. 1 ¶ 6.) RMF also asserts that the issues raised in the Recoupment Petition do not invoke the probate exception to removal based on diversity. (Doc. No. 1 ¶ 26.)

In her remand motion, Mathes does not address the probate exception or contest RMF's claim that the Trustee is a nominal party. However, she maintains that the amount in controversy is not met and refutes RMF's allegations that she acted in bad faith in naming and maintaining Burns as a party. Further, the administrator asserts that Burns remains a respondent in the underlying Recoupment Action and, therefore, that the parties are not completely diverse, for purposes of 28 U.S.C. § 1332. (Doc. No. 6.) In its response to the remand motion, RMF does not actually refute Mathes' contention that Burns is still a party to the Recoupment Action. Instead, it argues that Burns was fraudulently joined as a defendant and, alternatively, that Burns "should have been dismissed from the Probate Action and the reason she has not been dismissed is due to [the administrator's] bad faith." (Doc. No. 7, at 2.)

As set forth below, the court finds that RMF has not established diversity of citizenship. Consequently, the court finds that remand for lack of subject-matter jurisdiction is required, without reaching the questions of the amount in controversy[4] or whether the probate exception applies in this case.

---

[4] It appears that the amount in controversy would be met in this case. The Administrator purports to seek judgment in an amount "not less than $48,501," plus attorney's fees and punitive damages, as permitted by Tenn. Code Ann. § 71-6-120(d). (Doc. No. 1-2, at 17.)

### A.      Fraudulent Joinder

Although a district court lacks subject matter jurisdiction in a diversity action where the parties are not completely diverse, 28 U.S.C. § 1332, the "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *see also Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 958 (6th Cir. 2017). Fraudulent joinder arises "when the non-removing party joins a party against whom there is no colorable cause of action." S*aginaw Housing Comm'n v. Bannum*, 576 F.3d 620, 624 (6th Cir. 2009); *Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 406 (6th Cir. 2007) ("In order to determine whether a non-diverse defendant was fraudulently joined, we ask whether the plaintiff had a colorable basis for her claims against that defendant."). In determining whether a colorable claim exists, the court looks to state law. *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999).

RMF argues that Burns was fraudulently joined in the Recoupment Petition in order to

---

Attorney's fees and punitive damages should be taken into account in calculating the amount in controversy "unless it is apparent to a legal certainty that such cannot be recovered." *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 479 (6th Cir. 2014) (quoting *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001)). If the plaintiff prevailed in this case, such damages, together, would almost inevitably exceed $26,500, which, added to the plaintiff's damages figure of $48,501, meets the amount in controversy. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (holding that, where a plaintiff does not assert an exact amount of damages but, instead, seeks to recover "'some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement,' the defendant satisfies its burden when it proves that the amount in controversy 'more likely than not' exceeds $75,000" (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993))). In addition, Mathes seeks an injunction setting aside the reverse mortgage and prohibiting RMF from foreclosing on the Property. RMF has submitted evidence showing both that the indebtedness on the reverse mortgage exceeds $75,000 and that the value of the Property is well in excess of $75,000. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) ((quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977))). Insofar as either the Property or the reverse mortgage is the object of the litigation, the amount in controversy would likely be met by this method of calculation as well.

defeat diversity jurisdiction. That is, according to RMF, the Recoupment Petition, on its face, fails to state a colorable claim against Burns for fraud, exploitation, or civil conspiracy under Tennessee law. (Doc. No. 7, at 3–6.) The problem with this argument is that, if RMF is correct that the Petition fails on its face to state a colorable claim under state law against Burns, then it should have been apparent to RMF *upon service of the Recoupment Petition*, in early February 2017, that the petition failed to state a colorable claim and that the claims against Burns were subject to dismissal. In other words, under RMF's theory, RMF knew or should have known in February 2017 that Burns had been fraudulently joined and that the Petition was immediately removable. It did not attempt removal within 30 days of being served with the Recoupment Petition, however, and instead waited until August 2019 (and after its Motion for Summary Judgment had been denied by the state court) to remove the case on the basis of fraudulent joinder. Under this theory, removal was too late. *Accord Good Nutrition, LLC*, 2018 WL 7858719, at *5 ("Moreover, even if, as Defendant suggests, the joinder of Britton Gallagher was fraudulent as pled . . . , that fact would have been ascertainable to Defendant at the time of the filing of Plaintiff's initial Complaint. Consequently, Defendant's removal under § 1446(c)(1) on that basis would now be extremely untimely." (citing 28 U.S.C. § 1446(b)(3) & (c)(1))).

In short, under RMF's fraudulent joinder theory, the Recoupment Petition was immediately removable. RMF, however, did not seek to remove within thirty days after its receipt of a copy of the Petition, and removal was untimely under 28 U.S.C. § 1446(b)(1). *See also id.* § 1446(b)(3) (providing for removal beyond the thirty-day limitation only "if the case stated by the initial pleading is not removable").

### B. Removal Under 28 U.S.C. § 1446(b)(3) and (c)

RMF argues, in the alternative, that the case is removable because Mathes has kept Burns

in this action in bad faith, in order to defeat diversity jurisdiction. The court finds that removal on this basis was premature at best.

Section 1446(b)(3) requires that, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which . . . has become removable." The statute makes it clear that removal must be based on the receipt of *some document* showing that removal is appropriate.

"The definition of 'other paper' is broad and may include any formal or informal communication received by a defendant." *Hiser v. Seay*, No. 5:14-CV-170, 2014 WL 6885433, at *2 (W.D. Ky. Dec. 5, 2014); *see Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007) (discussing the judicial development of "other paper"); 14C Charles Alan Wright, et al., Federal Practice & Procedure § 3731 (4th ed.) ("[A]fter an unremovable action has been commenced in state court and the defendant has been served . . . , various discovery documents such as deposition transcripts, answers to interrogatories and requests for admissions, as well as amendments to ad damnum clauses of complaints, and correspondence between the parties and their attorneys or between the attorneys usually are accepted as 'other papers,' receipt of which can initiate a 30-day period of removability." (collecting cases)). Virtually every court that has considered the issue has held that settlement demand letters and other correspondence between parties may constitute "other paper." *See, e.g.*, *Nagarajan v. Ostruskza*, No. 5:12-CV-00091-TBR, 2012 WL 5077691, at *2 (W.D. Ky. Oct. 18, 2012) (holding that a post-complaint settlement demand from the plaintiff, valuing his case at more than $300,000, constituted "other paper" that ascertained removability); *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 761–62 (5th Cir. 2000) (holding that a post-complaint demand letter constituted an "other paper"

under § 1446); *Wilson v. Target Corp.*, 2010 WL 3632794, at *2 (S.D. Fla. Sept. 14, 2010) (construing the plaintiff's response to a request for an admission that her damages would exceed $75,000, in which the plaintiff stated only that she was unable to admit or deny that her damages would exceed that amount, as an "other paper" establishing removability, in light of a pre-suit demand letter detailing medical bills and demanding $1.5 million in relief).

Courts have also held that, in the case of a settlement agreement, if a defendant has come into possession of a settlement agreement showing that all claims against the non-diverse defendant have been settled and that the claims will be dismissed, the remaining defendant does not need to wait until the state court actually dismisses all claims against the non-diverse defendant in order to remove. *See, e.g.*, *Hiser*, 2014 WL 6885433, at *2 ("While there is little Sixth Circuit case law on this issue, federal courts have held that formal dismissal of the parties required to create diversity jurisdiction is not required as long as the parties have notice that the case will become removable." (citing *Bumgardner v. Combustion Eng'g, Inc.* 432 F. Supp. 1289, 1291 (D.S.C. 1977) ("Therefore, the defendants other than [the non-diverse defendant], upon learning of the settlement agreement, had a right to remove because the plaintiff had effectively discontinued its action against [the non-diverse defendant].")))

Thus, it is clear that a letter from counsel proposing settlement *may* constitute "other paper" under § 1446. The question in this case is whether the May 2019 letter from counsel to Burns offering a potential settlement constituted a document from which it could be "ascertained" that the case had become removable. "'Ascertain' means 'to make certain, exact, or precise' or 'to find out or learn with certainty.'" *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002) (quoting Webster's Ninth New Collegiate Dictionary 107 (1990)); *see also DeBry v. Transam. Corp.*, 601 F.2d 480, 489 (10th Cir. 1979) ("Section 1446(b) uses the word

'ascertained' in connection with the giving of notice. Webster's New Collegiate Dictionary (1975), defines the term 'ascertain' as 'to find out or learn with certainty.'").

The Sixth Circuit has held, in the context of determining whether a Class Action Fairness Act ("CAFA") case is removable, that "the thirty-day clocks of § 1446(b) begin to run only when the defendant receives a document *from the plaintiff* from which the defendant can *unambiguously ascertain* CAFA jurisdiction." *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 285 (6th Cir. 2016) (second emphasis added). The court noted that this "bright-line test" is consistent with that applied by other circuits. *Id.* (collecting cases); *see, e.g.*, *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 75 (1st Cir. 2014) (holding, in the context of ascertaining whether the amount in controversy is met, that the "other paper" must include "a clear statement of the damages sought or . . . sufficient facts from which the amount in controversy can easily be ascertained by the defendant by simple calculation" but that the defendant has no duty to investigate); *Gibson v. Clean Harbors Envtl. Servs., Inc.*, 840 F.3d 515, 519 (8th Cir. 2016) (holding, in the CAFA context, that the "thirty-day removal period set forth in § 1446(b)(3) does not begin to run until the defendant receives from the plaintiff an amended pleading, motion, order, or other paper 'from which the defendant can unambiguously ascertain' that the CAFA jurisdictional requirements have been satisfied" (citing *Graiser*, 819 F.3d at 285)); *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 139 (2d Cir. 2014) (in CAFA context, limiting the inquiry to the contents of the "other paper" and holding that the plaintiff's paper must either "explicitly" state facts showing that jurisdiction exists or facts from which jurisdiction can be ascertained); *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 825 (7th Cir. 2013) (holding that the pleading or other paper, either "on its face or in combination with earlier-filed pleadings, [must] provide[] *specific and unambiguous notice* that the case satisfies federal jurisdictional

requirements and therefore is removable" (emphasis added)); *Bosky*, 288 F.3d at 211 (requiring that the paper from which removability may first be ascertained "be unequivocal"); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 760 (11th Cir. 2010) (same, citing *Bosky*).

The "paper" upon which RMF relies is the May 30, 2019 letter from Mathes to Burns, notifying her that trial on the will contest and the Recoupment Petition was scheduled for September 9 and 10, 2019, suggesting that she obtain a lawyer, and proposing a settlement that might eliminate Burns from the case. The letter proposes: "I am offering to [unreadable] remaining balance of the judgment against you in return for your dism[unreadable] petition to probate the Last Will and Testament of John Jefferson Waller d[unreadable] 23, 2016." (Doc. No. 1-2, at 686.) Counsel for RMF also states via Declaration that he obtained a copy of this letter on August 19, 2019, when Annie Burns informed him that she was under the impression that she had entered into a settlement agreement that eliminated her from the case altogether. (Lieber Decl. ¶ 4, Doc. No. 1-2, at 682.) Burns told him that she had had an attorney review the settlement agreement, and the attorney had advised her that the settlement would benefit her because it would end the litigation against her. (*Id.* ¶ 5.) Counsel for RMF spoke with Burns' attorney, who confirmed Burns' statement. However, counsel for RMF apparently has not been provided with a copy of the settlement agreement. Counsel for RMF attempted to confer with Mathes, even before speaking with Burns, requesting "some clarification as to the settlement with Burns." (Aug. 13, 2019 email from Lieber to Mathes, Doc. No. 1-2, at 688.) Mathes responded by emailing him a copy of an order identified in the heading of her email as "Order Agreed Judgment Burns.doc" (*id.*), without comment. Counsel for RMF did not provide a copy of that attachment and does not identify it further. It is unclear whether the attached document

was the Agreed Judgment entered by the Probate Court in early 2017 or whether it was the Order Approving Settlement entered on July 12, 2019.

Regardless, neither of those documents dismissed the claims relating to the reverse mortgage asserted against Burns in the Recoupment Petition. The Agreed Judgment pertained only to funds Burns removed from the Estate after the Decedent's death and did not refer to any other claims. The Order Approving Settlement references a settlement agreement and indicates only that it approved a settlement that entailed the setting aside of the remainder owed by Annie Burns on the Agreed Judgment entered on February 24, 2017 in exchange for Burns' voluntary dismissal of her will contest. It does not purport to dismiss *all* claims asserted against Burns in the Recoupment Petition.

In her remand motion, Mathes represents that Burns has not been dismissed and that she remains a respondent in the Recoupment Action. (Doc. No. 6, at 6–7.) In its Response, RMF asserts that the Declaration of Annie Burns, attached thereto, "confirms that the settlement did in fact include a dismissal of all claims against Burns." (Doc. No. 7, at 6.) Alternatively, he "requests an opportunity to conduct jurisdictional discovery due to Plaintiff's insistence that the settlement did not involve Burns' dismissal." (Doc. No. 7, at 6.)

As set forth above, a settlement agreement and even a proposed offer to settle may, depending upon the circumstances, constitute an "other paper" establishing that a case "is or has become removable," for purposes of 28 U.S.C. § 1446(b)(3). In this case, however, while Mathes' letter constitutes evidence that the claims against Burns were settled, it is equivocal at best. It does not show unambiguously that the case has become removable on the basis of diversity of citizenship. Moreover, it is countered by contrary evidence in the record indicating that all claims against Burns were not dismissed, including the fact that the Order Approving

Settlement does not dismiss all claims against her. In addition, contrary to RMF's assertion, Burns' Declaration does not support the conclusion that the settlement actually dismissed all claims against her. It, too, is equivocal. Burns states that she was led to believe that the settlement would dismiss all claims against her, that she signed the documents the administrator placed in front of her, and that she "would not have signed the papers had [she] known that the Administrator would not be dropping <u>all</u> claims against [her]." (Doc. No. 7-1 ¶ 9.) She further indicates that she feels that she has been misled and manipulated. (*Id.* ¶ 11.) Again, the actual settlement agreement is not attached to Burns' Declaration, and it is unclear whether Burns is even in possession of a copy of it. Reading between the lines, the court understands Burns to be saying that, while she believed all claims against her would be dismissed, she may now have discovered that all claims against her were not dismissed.

While Mathes' letter to Burns and the subsequent course of events certainly give rise to a suspicion that all claims against Burns have been settled and should be dismissed, the letter does not readily verify that conclusion. RMF itself recognizes as much. (*See* Doc. No. 1 ¶ 5 (characterizing letter as merely "suggest[ing] the settlement was to include a full dismissal of claims").) The court finds that the letter proposing settlement, considered in conjunction with the Order Approving Settlement, Burns' Declaration, and Mathes' ambiguous response to counsel's email inquiring about the settlement, is not a document that permitted the defendant to unequivocally ascertain that the case had become removable. Instead, it put RMF on inquiry notice that removal *might* be appropriate. *Accord DeBry*, 601 F.2d at 489 (finding that a deposition response placed the defendant "on inquiry" but "was not sufficient to permit him to learn with certainty" that the case was removable).

Further, the court rejects RMF's request that it be permitted to conduct post-removal discovery in order to verify the terms of the settlement agreement and show that the case has become removable. RMF has not shown that diversity jurisdiction actually exists in this case, and the court cannot "retain" jurisdiction where it is not shown to possess jurisdiction to begin with. *Accord Ragar Transp., Ltd. v. Lear Corp.*, No. 16-CV-13510, 2016 WL 6600046, at *1 (E.D. Mich. Nov. 8, 2016) (rejecting motion to reconsider denial of request for post-removal discovery, stating: "It was Lear's burden to prove the Court's jurisdiction. In the absence of such proof, the Court must presume that it lacks subject matter jurisdiction."); *Knox Hills LLC v. Ambac Assur. Corp.*, No. 3:14-CV-00841-DJH, 2015 WL 1298622 (W.D. Ky. Mar. 23, 2015) (granting the plaintiff's motion to remand and rejecting the defendant's request that that the court "retain jurisdiction" and permit jurisdictional discovery); *May v. Wal-Mart Stores, Inc.*, 751 F. Supp. 2d 946, 949-55 (E.D. Ky. 2010) ("[J]urisdictional discovery is anathema to the limited nature of federal jurisdiction and the need to respect the authority of state courts."). As the Fifth Circuit explained in *Lowery v. Alabama Power Co.*,

> Post-removal discovery for the purpose of establishing jurisdiction in diversity cases cannot be squared with the delicate balance struck by Federal Rules of Civil Procedure 8(a) and 11 and the policy and assumptions that flow from and underlie them. Certainly, the power to grant discovery generally is conferred to the sound discretion of the district court, and post-removal jurisdictional discovery may appear to present a viable option for a court examining its jurisdiction. Jurisdictional discovery could avoid the problem of speculation by the court. Sound policy and notions of judicial economy and fairness, however, dictate that we not follow this course.
>
> . . . .
>
> Just as a plaintiff bringing an original action is bound to assert jurisdictional bases under Rule 8(a), a removing defendant must also allege the factual bases for federal jurisdiction in its notice of removal under § 1446(a). Though the defendant in a diversity case, unlike the plaintiff, may have no actual knowledge of the value of the claims, the defendant is not excused from the duty to show by fact, and not mere conclusory allegation, that federal jurisdiction exists. Indeed, the defendant, by removing the action, has represented to the court that the case

belongs before it. Having made this representation, the defendant is no less subject to Rule 11 than a plaintiff who files a claim originally. Thus, a defendant that files a notice of removal prior to receiving clear evidence that the action satisfies the jurisdictional requirements, and then later faces a motion to remand, is in the same position as a plaintiff in an original action facing a motion to dismiss. The court should not reserve ruling on a motion to remand in order to allow the defendant to discover the potential factual basis of jurisdiction. Such fishing expeditions would clog the federal judicial machinery, frustrating the limited nature of federal jurisdiction by encouraging defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction.

*Lowery*, 483 F.3d at 1215–17.

In short, the court finds that RMF has not established that it is in possession of any "paper" showing unequivocally and unambiguously, whether alone or in combination with other documents, that Burns has been dismissed from the Recoupment Action. It therefore cannot show that the case has become removable on the basis of diversity jurisdiction. Nor is RMF entitled to discovery to establish that diversity exists. It had an obligation to conduct that discovery and actually ascertain, prior to removal, that removal on the basis of diversity jurisdiction was appropriate.

Effectively conceding that Burns has not been dismissed, RMF appears to be arguing in the alternative that it is only Mathes' bad faith that has kept Burns in the case for the purpose of depriving RMF of the ability to remove to federal court and that the court should consider the question of bad faith in order to determine whether Burns' presence in the litigation should simply be disregarded. An inquiry into bad faith as contemplated by 28 U.S.C. § 1446(c), however, only becomes appropriate after the defendant has received a copy of a document from which "it may be ascertained that the case is one which . . . has become removable," under §

1446(b)(3). There is no such document in this case, and the court will not indulge in a hypothetical inquiry as to whether the plaintiff has engaged in bad faith.[5]

## IV. CONCLUSION

For the reasons set forth herein, the court finds that removal based on fraudulent joinder was late by more than two years and that removal based on the supposed settlement of all claims against the non-diverse defendant is premature, because it is not clear that all claims against the non-diverse defendant have been dismissed. An Order granting the remand motion is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

---

[5] RMF also insists that Burns was never properly served in this case, suggesting both that this failure constitutes another sign of bad faith and that it indicates that perhaps Burns is not really a party at all. (*See* Doc. No. 7 ¶ 20 ("Plaintiff argues that removal is not proper because Burns was never dismissed from the Probate Action. However, Burns was also never properly served.").) Notwithstanding Burns' Declaration concerning her understanding of whether she had authorized her then-attorney to accept service of process on her behalf (Doc. No. 7-1 ¶ 5), it is abundantly clear that Burns long ago waived any affirmative defense based on improper service or insufficiency of process. She never asserted these as affirmative defenses; neither she nor her attorney notified the administrator that the attorney was not authorized to accept service, and she actively participated in the litigation for more than two years without raising any objection on those grounds. *See* Tenn. R. Civ. P. 8.03 ("In pleading to a preceding pleading, a party shall set forth affirmatively facts . . . relied upon to constitute . . . an affirmative defense."); *Allgood v. Gateway Health Sys.*, 309 S.W.3d 918, 925 (Tenn. Ct. App. 2009) ("Insufficiency of service of process is an affirmative defense that must be presented in the defendant's answer or in a pre-answer motion. . . . Failure to comply with Rule 8.03 will result in a waiver of the defense.").